ALMON, Justice.
This appeal is from a declaratory judgment which afforded defense and coverage to an insured in a fraud action based upon the court’s finding of an “occurrence” and “property damage” within the meaning of the policy.
Charles Turner is a peanut farmer in Geneva County, Alabama. In the years 1978 and 1979, Turner marketed some or all of his peanuts through a marketing cooperative association known as the Geor *6 gia, Florida, Alabama Peanut Association (GFA). GFA has a contract with the Commodity Credit Corporation, a governmental agency which advances loans to farmers who place their peanuts in GFA. The farmers retain title to the peanuts and, upon sale of the commodity, receive a dividend equalling the difference between the profits from the sale and their original loan advance.
On or about September 12, 1980, Turner carried his peanuts to the Geneva, Alabama, buying point of Sessions Company, Inc. (Sessions), a peanut processing corporation. Turner instructed Buddy Ward, a Sessions employee, to place all of his quota peanuts, those which were not already under contract, in GFA. According to Turner, Ward stated that although he would be glad to place Turner’s quota peanuts in GFA, Sessions had the right to buy the peanuts back from GFA for the same price which GFA would pay Turner, plus a small handling fee. Turner stated that if Sessions could in fact buy the peanuts back from GFA, he would sell them directly to Sessions; otherwise Turner would place his peanuts directly in GFA for marketing. According to Turner, he agreed to sell his quota peanuts directly to Sessions in reliance upon Ward’s representations. Following this transaction, Sessions retained possession of the peanuts and mailed a check to Turner covering their surplus price. Sessions, however, failed to place these peanuts in GFA, which, in 1980, paid members a dividend of approximately $978.00 a ton.
Turner filed suit against Sessions in Geneva Circuit Court, alleging that the statement made to him by an agent of Sessions that Sessions could buy his quota peanuts back from GFA constituted either an innocent, reckless, or intentional misrepresentation of material fact upon which Turner detrimentally relied in selling his peanuts directly to Sessions instead of marketing them with GFA and receiving the $978.00 per ton dividend. Turner sought both compensatory damages, in an amount equivalent to the 1980 dividend which he would have received had his quota peanuts been marketed with GFA, and punitive damages.
Prior to September 12, 1980, Safeco Insurance Companies (Safeco) issued a blanket liability insurance policy to Sessions. Sessions duly notified Safeco of the fraud action and requested that Safeco provide defense against and coverage for all claims asserted therein. Although Safeco originally began defending Sessions in the fraud action, it subsequently denied coverage and initiated this declaratory judgment action against Sessions and Turner to determine its obligations, if any, under the policy. Safeco also obtained an injunction against further proceedings in the fraud action pending a declaration of rights under its policy.
The trial court, after hearing testimony in open court, ordered that Safeco afford defense and coverage to Sessions in the fraud action based upon its findings of an “occurrence” and “property damage” within the meaning of the policy. The court also found that no policy exclusions were applicable, because the allegations of fraud, if proven at trial, would preclude title from passing to Sessions.
The policy which Safeco issued to Sessions provided the following coverage:
“The company will pay all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence.” (Emphasis in original.)
Because both sides concede that the fraud action contained no allegations of “bodily injury,” the question of coverage is necessarily confined to the existence of “property damage,” which the policy defines as
“(a) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during *7 the policy period.” (Emphasis in original.)
Because there was no “physical injury to or destruction of tangible property” alleged in Turner’s complaint, the only possible coverage would fall under the second definition of “property damage”: the “loss of use of tangible property which has not been physically injured or destroyed .... ”
We need not determine whether the allegations of Turner's complaint fall within this second definition of property damage, due to the presence of the following relevant policy exclusions:
“This insurance does not apply ...
“(e) to property damage: (1) to property owned or transported by the insured; ... (3) to property under bailment to the insured (except injury to or destruction of such property arising out of the use of elevators or escalators or to liability assumed under sidetrack agreements) .... ” (Emphasis in original.)
Under this policy, the term ‘bailment’ is further defined as
“a delivery of property by any person to the insured for some purpose beneficial to either the insured or such person or both under a contract, express or implied, for the insured to carry out such purpose and to redeliver such property or otherwise dispose of it as provided.” (Emphasis in original.)
The allegations of Turner’s complaint state that he sold his gross peanuts to Sessions based upon its misrepresentations concerning the GFA. Hence, title to these peanuts passed to Sessions, subject to Turner’s right to rescind the contract, return the money which he received from Sessions, and seek the return of his peanuts. See Glass v. Cook, 257 Ala. 141, 57 So.2d 505 (1952). Yet, because Turner’s complaint affirms the transaction between the parties and seeks only money damages, Sessions is deemed to be the owner of the peanuts, thereby invoking exclusion (e)(1), which precludes defense and coverage for damage to property which the insured owns.
Assuming, however, that the peanut transaction did not amount to a sale with title passing to Sessions, the delivery of the peanuts to Sessions and its taking possession of the commodity with the intent to exercise control over the property in accordance with an agreement between the parties clearly qualifies as a bailment under both Alabama law and the policy definition. See Farmer v. Machine Craft, Inc., 406 So.2d 981 (Ala.Civ.App.1981).
We therefore hold that in the event the ownership exclusion (e)(1) were deemed in-apposite, policy coverage would nevertheless be precluded under the bailment exclusion (e)(3).
The judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.